UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

WILEY GREGORY MAYES,

          Plaintiff,

v.

SARAH SCHROEDER et al.,

          Defendants.
_____/

Case No. 2:22-cv-201

Honorable Maarten Vermaat

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 6.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v.*

*Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Schroeder, Wood, Bedient, Lancour, Hoover, Seymore, Vallequette, Creden, and Koski. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Pickard and Osterhaut: (1) Plaintiff's official capacity claims; (2) Plaintiff's Eighth Amendment conditions of confinement claims; and (3) Plaintiff's Fourteenth Amendment due process claim against Defendant Osterhaut. Plaintiff's Eighth Amendment excessive force claims against Defendants Pickard and Osterhaut remain in the case.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

## Discussion

### I.     Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Muskegon County, Michigan. The events about which he complains, however, occurred at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. Plaintiff sues Warden Sarah Schroeder; Grievance Officer J. Lancour; Resident Unit Manager Unknown Hoover; Sergeants Unknown Bedient and Unknown Seymore; Corrections Officers Unknown Pickard, Unknown Osterhaut, Unknown Vallequette, and Unknown Creden; Mental Healthcare Professional George Wood; and Nurse Unknown Koski. Plaintiff indicates that he is suing Defendants Schroeder, Lancour, Hoover, Bedient, Seymour, Vallequette, Creden, and Wood in their official capacities only. (ECF No. 1, PageID.2–3.) He names Defendants Pickard and Osterhaut in their official and personal capacities. (*Id.*, PageID.3.) Plaintiff does not indicate in which capacity he is suing Defendant Koski; the Court, therefore, will construe his complaint to name her in both her official and personal capacities.

Plaintiff alleges that from March 11 through March 24, 2022, he suffered an episode of depression and was placed in observation cell #202 because he had tried to commit suicide. (*Id.*, PageID.4.) Plaintiff contends that during this time, Defendant Osterhaut issued a false misconduct ticket that resulted in Plaintiff's mattress being taken from him. (*Id.*) Plaintiff "carried out multiple suicide attempts" during this period, but each time, Defendant Wood refused to refer Plaintiff for treatment. (*Id.*) Plaintiff was not allowed to shower "as often as [he] was supposed to." (*Id.*) When he did receive showers, he was not given toothpaste and toothbrush. (*Id.*) Plaintiff was forced to shower barefoot. (*Id.*) He also was not allowed to clean his cell "as [he] was supposed to." (*Id.*) Plaintiff contends that he had to sit in the restraint chair several times, for 10 hours at a time,

4

because he had tried to hang himself. (*Id.*) Plaintiff "was stripped of [his] suicide gown, blanket[, and] mattress and was not allowed anything to cover with or lay on." (*Id.*)

Plaintiff tried to hang himself on March 17, 2022. (*Id.*, PageID.5.) Defendant Seymore told Defendant Vallequette to wait at Plaintiff's cell door while he prepared for a "cell rush." (*Id.*) Once they entered Plaintiff's cell, Defendant Vallequette struck Plaintiff on the chin with the riot shield. (*Id.*) Plaintiff rolled over onto his stomach and allowed Defendant Osterhaut to handcuff him. (*Id.*) Defendant Osterhaut then punched Plaintiff in the eye, threw him to the other side of the concrete foundation, and pulled the blanket that was around Plaintiff's neck tighter. (*Id.*) Defendant Pickard then knelt on Plaintiff's neck with his knee, causing Plaintiff to be unable to breathe. (*Id.*) Plaintiff was taken from the cell and placed in a restraint chair. (*Id.*, PageID.6.) He asked Defendant Koski for treatment for his neck and chin; she told him that "all she want[ed] to do [was] check [his] vitals." (*Id.*, PageID.6.)

Plaintiff complained to Captain Baldin (not a party), who told Plaintiff, "We have a lot to deal with and sometimes the pressure gets to us." (*Id.*) Plaintiff was sent back to cell #202 without a blanket. (*Id.*) He later learned that Defendant Creden issued him a misconduct ticket for kicking him in the leg. (*Id.*) Plaintiff claims he did not do so but was still found guilty. (*Id.*)

Plaintiff tried to hang himself again on March 18, 2022, and was forced to be in the restraint chair for 10 hours. (*Id.*, PageID.7.) He was sent back to cell #202 and was not given anything to cover himself. (*Id.*) Plaintiff contends that other inmates "were made to watch" him. (*Id.*) Plaintiff was distressed "at the concept of these men viewing [him] while naked and [he] was told by Captain Baldin, 'You shouldn't try to kill yourself.'" (*Id.*)

Plaintiff avers that he was not allowed to have a mattress, blanket, and suicide gown for a period of more than 10 hours. (*Id.*) He was forced to use the cellophane wrappers from his food to

cover the concrete so that he could have somewhere "clean" to sit. (*Id.*) Plaintiff also had to use the wrappers to cover the toilet. (*Id.*)

Plaintiff claims that during this time, he had kept Defendant Schroeder apprised of what had occurred and that she failed to act. (*Id.*, PageID.8.) Once released from the observation cell, Plaintiff submitted grievances to Defendant Lancour for filing. (*Id.*) Plaintiff contends that Defendant Lancour filed the grievance that Plaintiff had submitted about the use of excessive force but not the grievance that Plaintiff had submitted about "the other happenings." (*Id.*)

On April 11, 2022, Defendant Bedient interviewed Plaintiff regarding his excessive force grievance. (*Id.*) After not hearing back, Plaintiff submitted kites and another grievance. (*Id.*) Plaintiff subsequently kited Defendant Hoover to receive a Step Two grievance form. (*Id.*) Defendant Hoover told Plaintiff to kite Defendant Lancour, who told Plaintiff to kite Defendant Hoover again. (*Id.*) Plaintiff asked Defendant Hoover for a Step Two form and was denied because Defendant Hoover said he was not allowed to have one. (*Id.*, PageID.8–9.) Plaintiff contends that he finally received a response from Defendant Bedient on May 23, 2022, stating that "he could not tell what took place in the cell because [Plaintiff] had previously covered it with fecal matter." (*Id.*, PageID.9.) Plaintiff avers that this "is clearly not the truth." (*Id.*)

Based on the foregoing, the Court construes Plaintiff's complaint to assert Eighth Amendment conditions of confinement, excessive force, and denial of medical care claims. The Court also construes Plaintiff's complaint to assert Fourteenth Amendment due process claims, as well as claims regarding the grievance process at LMF. Plaintiff seeks no less than $250,000.00 in damages. (*Id.*, PageID.10.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

7

### A. Official Capacity Claims

As noted *supra*, Plaintiff sues Defendants Schroeder, Lancour, Hoover, Bedient, Seymour, Vallequette, Creden, and Wood in their official capacities only. (ECF No. 1, PageID.2–3.) He names Defendants Pickard and Osterhaut in their official and personal capacities. (*Id.*, PageID.3.) Plaintiff does not indicate in which capacity he is suing Defendant Koski; the Court, therefore, will construe his complaint to name her in both her official and personal capacities.

Although an action against a defendant in his or her individual capacity intends to impose liability on the specified individual, an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Plaintiff only seeks damages in this action. (ECF No. 1, PageID.10.) Official capacity defendants, however, are absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court, therefore, will dismiss Plaintiff's claims for monetary damages against Defendants in their official capacities. That leaves only Plaintiff's individual capacity claims against Defendants Pickard, Osterhaut, and Koski.

> **B. Individual Capacity Claims Against Defendants Pickard, Osterhaut, and Koski**
>
> **1. Eighth Amendment Claims**
>
> **a. Conditions of Confinement**

Plaintiff takes issue with several of the conditions within the observation cell he was confined to from March 11 through March 24, 2022. He argues that: (1) he was not allowed to shower often; (2) he did not receive toothpaste and a toothbrush; (3) he was not provided shower shoes; (4) he was unable to clean his cell; (5) he was placed in the restraint chair several times; and (6) he was stripped of his mattress, blanket, and suicide gown. (ECF No. 1, PageID.4.)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison

9

confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Plaintiff's complaint is devoid of any allegations suggesting that Defendants Pickard and Osterhaut were personally involved or responsible for any of the alleged conditions during Plaintiff's time in the observation cell. "Summary reference to a single, five-headed 'Defendants' does not support a reasonable inference that each Defendant is liable for" the conditions of which Plaintiff complains. *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." (quoting *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011))). Plaintiff's allegations regarding the conditions within the observation cell simply fail to permit an inference that Defendants Pickard and Osterhaut were personally aware of and disregarded those conditions.

The only time that either Defendant is even mentioned with respect to the conditions Plaintiff faced is when Plaintiff alleges that Defendant Osterhaut issued a false misconduct ticket that led to Plaintiff's mattress being taken from him. (ECF No. 1, PageID.4.) Again, nothing in the complaint suggests that Defendant Osterhaut is the one who personally removed Plaintiff's mattress from the cell. In any event, while unpleasant, Plaintiff's temporary lack of a mattress fails to state an Eighth Amendment claim. "The level of discomfort and injury one might expect a prisoner to suffer by virtue of sleeping without a mattress for a few days simply cannot support a claim that the prisoner has been denied 'the minimal civilized measure of life's necessities.'" *Lee v. Wagner*, No. 1:17-cv-474, 2017 WL 2608752, at *4 (W.D. Mich. June 16, 2017) (quoting *Rhodes*, 452 U.S. at 347). Despite variations on: (1) the reason for the restriction; (2) the duration of the restriction; (3) the susceptibility of the prisoner to injury; and (4) the alleged injury, the courts in the Sixth Circuit have routinely rejected Eighth Amendment claims for mattress

11

restrictions.[2] Likewise, the Court of Appeals for the Ninth Circuit has concluded that requiring a prisoner to sleep on the floor for a four-week period without a mattress does not violate the Eighth Amendment. *See Schroeder v. Kaplan*, No. 93-17123, 1995 WL 398878, at *2 (9th Cir. July 7, 1995). While Plaintiff suggests that he experienced discomfort without a mattress, that fact does

---

[2] *See Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) ("In the absence of evidence that a prisoner suffered a physical injury, the deprivation of a mattress and bedding for a fixed period of time does not violate the Eighth Amendment."); *Jones v. Toombs*, No. 95-1395, 1996 WL 67750 (6th Cir. Feb. 15, 1996) (prisoner denied mattress for two weeks); *Carter v. Hickok*, No. 1:14-cv-1099, 2016 WL 4727427 (W.D. Mich. Sep. 12, 2016) (prisoner was deprived of mattress for four days because of damage to the mattress; prisoner suffered from Multiple Sclerosis; loss of mattress resulted in exacerbation of MS, pain in hips, back, and thighs, anxiety, depression, humiliation and discomfort and sleep deprivation); *Peterson v. County of Monroe*, No. 12-cv-11460, 2014 WL 1328205 (E.D. Mich. Mar. 28, 2014) (prisoner deprived of mattress for four days and contended that he suffered "frostbite" as a result though the court concluded undisputed evidence showed only light bruising and dry skin); *Bean v. Tribley*, No. 2:11-cv-427, 2012 WL 2317580 (W.D. Mich. Jun. 18, 2012) (prisoner used mattress to facilitate a sexual misconduct violation; mattress removed for seven days with no substitute, despite documented history of back problems); *Sanders v. Smith*, No. 1:11-cv-892, 2011 WL 5921246 (W.D. Mich. Nov. 27, 2011) (prisoner deprived of mattress, sheets, and bed coverings for 38 days following placement on suicide watch and misconduct charge for destruction of property, even after officials removed plaintiff from suicide watch and he was found not guilty of property destruction); *Seay v. Prince*, No. 1:10-CV-P59-R, 2010 WL 3340599 (W.D. Ky. Aug. 20, 2010) (prisoner with "bad back" denied mat and forced to sleep on the floor for two 48-hour periods and one 24-hour period, but court found no Eighth Amendment violation); *Jones v. Carberry*, No. 2:08-cv-268, 2010 WL 1172562 (W.D. Mich. Mar. 24, 2010) (prisoner deprived of mattress for 39 days after receiving major misconduct ticket for destroying his mattress and plaintiff suffered general discomfort and back pain as a result); *Robinson v. McBurney*, No. 2:07-cv-85, 2009 WL 440634 (W.D. Mich. Feb. 23, 2009) (prisoner deprived of mattress in close observation cell following suicide attempt, deprivation for only one day; mattress was removed under mistaken belief that it had to be removed for proper suicide watch); *Carter v. Ricumstrict*, No. 07-13311, 2008 WL 4225844, *2 (E.D. Mich. Sep. 10, 2008) (prisoner deprived of mattress several times for fixed periods of time because he used it to facilitate sexual misconduct violations; prisoner suffered from Multiple Sclerosis and loss of mattress caused "aches and pains and constant muscle spasms"); *Reed v. Rutter*, No. 2:08-cv-200, 2008 WL 4741724 (W.D. Mich. Oct. 24, 2008) (prisoner used rolled-up mattress as a platform to commit sexual misconduct violation and was without any mattress or substitute for five days); *Kelly v. Holman*, No. 2:07-cv-206, 2007 WL 5335188 (W.D. Mich. Dec. 14, 2007) (prisoner deprived of mattress for seven days following misconduct ticket; suffered back problems as a result), *report and recommendation adopted in relevant part*, 2008 WL 2795573 (W.D. Mich. Jul. 18, 2008); *Jarrett v. Bouchard*, No. 2:05-cv-195, 2006 WL 2632460 (W.D. Mich. Sep. 13, 2006) (prisoner deprived of mattress for four days after rolling mattress up and using it to strike at cell window).

not rise to the level of an Eighth Amendment violation. *See Brandon v. Bergh*, No. 2:09-CV-179, 2009 WL 4646954, at *3-4 (W.D. Mich. Dec. 8, 2009) (finding that prisoner's claims that he was required to sleep on a blanket on the floor, which was uncomfortable and caused him to suffer a variety of aches and pains, prompting him to seek help from health services, failed to show that he suffered any serious medical problems as a result of his mattress restriction); *Pullum v. Herman*, No. 1:05-CV-365-TS, 2005 WL 2756729, at *2 (N.D. Ind. Oct. 25, 2005) (finding that sleeping on the floor, even though prisoner alleged back pain from doing so, did not deprive prisoner of the minimal civilized measure of life's necessities).

While certainly unpleasant, Plaintiff fails to allege facts that the denial of a mattress, along with the other conditions mentioned above, were anything other than temporary inconveniences, and temporary inconveniences do not show that the conditions complained about fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). Thus, to the extent Plaintiff asserts Eighth Amendment conditions of confinement claims against Defendants Pickard and Osterhaut, such claims will be dismissed.

### b. Excessive Force

Plaintiff contends that on March 17, 2022, after a team of officers had entered his cell and he had been handcuffed, Defendant Osterhaut punched Plaintiff in the eye, threw Plaintiff across the concrete foundation, and pulled the blanket that was wrapped around Plaintiff's neck tighter. (ECF No. 1, PageID.5.) Plaintiff also avers that Defendant Pickard knelt on Plaintiff's neck with his knee, causing Plaintiff breathing difficulties. (*Id.*) Plaintiff's claim must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that

13

courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 321–22 (1986).

Not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson*, 503 U.S. at 9 (holding that "[n]ot every push or shove . . . violates a prisoner's constitutional rights") (internal quotations omitted). On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x. 579, 582 (6th Cir. 2011). Given Plaintiff's allegations, the Court concludes that he has set forth plausible Eighth Amendment excessive force claims against Defendants Osterhaut and Pickard.

### c. Denial of Medical Care

Plaintiff avers that after the use of force, he asked Defendant Koski to treat his neck and chin, but that she told him that "she doesn't care [and that] all she want[ed] to do [was] check [his] vitals." (ECF No. 1, PageID.6.) The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical

14

care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

Here, Plaintiff's complaint is devoid of facts from which the Court can infer that Defendant Koski ignored a serious medical need. Plaintiff does not describe why he wanted care for his chin and neck. Presumably, Plaintiff suffered minor cuts and bruises to his chin when Defendant Vallequette struck him with the riot shield. Likewise, he presumably had bruises around his neck from the blanket he used to try to hang himself. Minor cuts and bruises, however, do not constitute a serious medical need for purposes of the Eighth Amendment. *See Lockett v. Suardini*, 526 F.3d 866, 876 (6th Cir. 2008) (concluding that minor lacerations, cuts, and soreness in two fingers did not constitute serious medical needs); *Blackmore*, 390 F.3d at 898 (citing cases involving minor injuries that did not support Eighth Amendment claims, including cuts and bruises resulting from a glass splinter that did not require stitches or painkillers); *Zentmyer v. Kendall Cnty., Ill.*, 220 F.3d 805, 810 (7th Cir. 2000) (reasoning that the failure to treat "the sorts of ailments [including scrapes and bruises] for which many people who are not in prison do not seek medical attention—does not . . . violate the Constitution"). Nothing set forth in Plaintiff's complaint permits the Court to infer

16

that any injuries to Plaintiff's chin and neck were severe and, thus, constituted a serious medical need. *See Telles v. Stainslaus Cnty. Sheriff's Dep't*, No. 1:10-cv-1911, 2011 WL 2036962, at *5 (E.D. Cal. May 24, 2011) (concluding that cuts and bruises were not a serious medical need when the plaintiff failed to establish the severity of his injuries). Plaintiff has failed to allege sufficient facts for purposes of the objective prong of an Eighth Amendment claim regarding the denial of medical care. The Court, therefore, will dismiss Plaintiff's claim against Defendant Koski.

### 2. Fourteenth Amendment Due Process Claim

According to Plaintiff, Defendant Osterhaut issued Plaintiff a false misconduct that resulted in Plaintiff's mattress being taken from him. The Court has construed Plaintiff's complaint to assert a violation of the procedural protections of the Fourteenth Amendment's Due Process Clause. A prisoner's ability to challenge a prison misconduct conviction depends on whether the conviction implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

As an initial matter, Plaintiff's complaint is wholly devoid of any facts concerning the nature of the charges of misconduct and whether Plaintiff was convicted of the misconduct. In any event, Plaintiff does not allege that any misconduct conviction had any effect on the duration of his sentence—and he cannot. Plaintiff is serving sentences imposed in 2013 and 2016 for crimes committed in 2011, 2013, and 2015. *See* https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=793413 (last visited Oct. 31, 2022). For inmates serving sentences for offenses committed after 2000, even a major misconduct conviction results only in the accumulation of "disciplinary time." *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the

17

Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011). Thus, any misconduct conviction had no impact on the duration of Plaintiff's sentence.

Plaintiff also fails to show that any sanction he received was an "atypical" and "significant deprivation" because he does not include any allegations regarding the sanctions that he received. *See Sandin*, 515 U.S. at 484. Plaintiff states only that his mattress was taken. The removal of Plaintiff's mattress from March 11 through March 24, 2022, does not rise to the level of an "atypical and significant hardship" under *Sandin*. *See Sanders v. Smith*, No. 1:11-cv-892, 2011 WL 5921426, at *17 (W.D. Mich. Nov. 27, 2011) (concluding that more than 30 days on a "mattress, sheets, and bed covering restriction" with no clothes was not so "atypical and significant" as to give rise to a Fourteenth Amendment due process claim).

Plaintiff fails to allege any facts showing that he was subjected to conditions which would implicate a liberty interest because of the allegedly false misconduct ticket. His Fourteenth Amendment due process claim against Defendant Osterhaut will, therefore, be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Schroeder, Wood, Bedient, Lancour, Hoover, Seymore, Vallequette, Creden, and Koski will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Pickard and Osterhaut: (1) Plaintiff's official capacity claims; (2) Plaintiff's Eighth Amendment conditions of confinement claims; and (3) Plaintiff's Fourteenth Amendment due process claim against Defendant Osterhaut. Plaintiff's

Eighth Amendment excessive force claims against Defendants Pickard and Osterhaut remain in the case.

An order consistent with this opinion will be entered.

Dated: November 15, 2022 /s/ *Maarten Vermaat*
Maarten Vermaat
United States Magistrate Judge